**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| AMANDA HAMMOND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:21-CV-00209 JCH |
| | ) |
| 801 RESTAURANT GROUP, LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants 801 Restaurant Group, LLC ("801 Group" and 801 Fish STL, LLC's ("801 Fish" or, collectively "Defendants") motion to dismiss Plaintiff Amanda Hammond's complaint for failure to prosecute due to lack of timely service pursuant to Fed. R. Civ. P. 41(b), and, in the alternative, to dismiss Counts IV and V of her complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), and to strike paragraphs 52 through 71 pursuant to Fed. R. Civ. P. 12(f).  Docs. [7], [16].  Plaintiff responded to the motions, Defendant 801 Group filed a reply, and the matter is fully briefed and ripe for disposition.  For the reasons set forth below, Defendants' motions will be granted in part and denied in part.

**I.    Factual and Procedural Background**

Taken as true for the purpose of the motion to dismiss, the facts alleged in the amended complaint are as follows.  Plaintiff began working for Defendants in 2015, and was promoted to the position of Lead Bartender in February 22, 2016.  Doc. 6 at ¶¶ 29, 31.  In January 2016, Plaintiff's supervisor and then General Manager, Ian Rockwell, entered into a sexual relationship with Plaintiff, despite Defendants' written policy prohibiting Rockwell from engaging in such fraternization with his supervisees.  Doc. 6 at ¶ 52.  Plaintiff alleges that Rockwell's behavior

was tolerated and condoned by Defendants, as shown by a culture of sexual harassment at the restaurant, and that Defendants failed to take prompt and effective action to protect female employees from such harassment Doc. 6 at ¶¶ 54-55. In July of 2016, Plaintiff informed Rockwell that their sexual relationship was inappropriate, and asked him to keep their interactions strictly professional going forward. Doc. 6 at ¶ 60.

In September 2016, Rockwell was accused by another subordinate of engaging in sexually harassing conduct with female employees, and Rockwell terminated the employee who made the report. Doc. 6 at ¶¶ 61, 63. In January 2017, Rockwell lured Plaintiff, who was intoxicated, to his hotel room where they had an unprotected sexual encounter. Doc. 6 at ¶ 65. Plaintiff discovered that she was pregnant shortly after that encounter. Doc. 6 at ¶ 66. In February of 2017, another employee filed a Charge of Discrimination against one of Defendants' owners and Rockwell, as well as an affiliated restaurant, 801 Chophouse STL. Doc. 6 at ¶ 67. Plaintiff disclosed her pregnancy to Defendants in March 2017, despite Rockwell's requests that she not do so. Doc. 6 at ¶ 69. Rockwell was terminated shortly thereafter. Doc. 6 at ¶ 70.

In September 2017, another employee was secretly promoted to Lead Bartender, causing Plaintiff to express concern to her supervisor that this could affect her job security. Doc. 6 at ¶ 72. Plaintiff was worried that if the restaurant had two Lead Bartenders it would lead to a reduction-in-force after she returned from maternity leave. Doc. 6 at ¶ 73.

On September 23, 2017, Plaintiff gave birth to her child, and began maternity leave. Doc. 6 at ¶ 74. She sent a birth announcement to 801 Fish, which was placed on the employee bulletin board. Doc. 6 at ¶ 75. In mid-October, Defendants asked Plaintiff to cut short her maternity leave and return to work in order to cover for the other Lead Bartender, who would be absent for a few weeks. Doc. 6 at ¶ 76. Plaintiff agreed to return to work, but informed her

supervisor that she would be breastfeeding and would need a private place to express milk. Doc. 6 at ¶ 77. At Plaintiff's first shift back, she attended a pre-shift meeting at which it became clear that no member of management had informed the staff that she would need a private space to pump. Doc. 6 at ¶ 85. Plaintiff announced that she would need to pump in the staff office, and asked the other employees to refrain from entering the office when the door was closed. Doc. 6 at ¶ 86. Later that day, when Plaintiff went to pump for the first time, she discovered that someone had created and placed a sign on the office door labeling it the "Nipple Room." Doc. 6 at ¶ 87. Shortly thereafter, an employee modified the sign, turning the "OO" and "PP" into breasts with milk dripping from the nipples. Doc. 6 at ¶ 88. Additionally, someone had placed the photo of her baby from the birth announcement upside down underneath the sign, so that her son appeared to be drinking from the hand-drawn breasts. Doc. 6 at ¶¶ 90-92.

Plaintiff alleges that she endured further jokes and comments about her breastfeeding and pumping. For example, Plaintiff's Manager and Assistant General Manager made a practice of using Clorox Wipes to wipe down the office after she was done pumping, "in case [her] milk was on anything." Doc. 6 at ¶ 95. Other employees gasped and recoiled in mock horror when Plaintiff carried her expressed milk to the refrigerator, joked about using her milk as coffee creamer for guests and employees at the restaurant, and complained about being unable to use the office while she was in there pumping. *Id.* Plaintiff became so humiliated and concerned about her employment security that she decided to stop pumping. Doc. 6 at ¶ 101.

In February 2018, the General Manager left the restaurant, and the Assistant Manager was promoted to fill that position. Doc. 6 at ¶¶ 102-03. Per Defendants' usual process, Plaintiff, as senior Lead Bartender, should have been next in line for promotion to the Assistant Manager position, but she was not promoted. Doc. 6 at ¶ 104. When she inquired as to why she was not

3

interviewed or even considered for the position, she was informed that it was assumed she would not want the job because she had recently had a child.  Doc. 6 at ¶ 105.  Shortly thereafter, Defendants refused to send Plaintiff for the Sommelier Certification Exam in Kansas City, even though she requested to be sent, and the certification served as a pre-condition to promotion to certain management positions at Defendants' organization.  Doc. 6 at ¶¶ 107-08.  In May 2018, Plaintiff and the other Lead Bartender were demoted and had their pay decreased, with the stated reason being the increased payroll costs related to having two Lead Bartenders.   Doc. 6 at ¶¶ 109-10.

On June 4, 2018, Plaintiff filed a charge of discrimination with the EEOC and the Missouri Commission on Human Rights.  Doc. 6 at ¶ 113.  After filing her charge, Plaintiff was subjected to various employment actions that she believed to be retaliation for the same.  For example, she was again passed over for promotion to Assistant General Manager, while that position went to an employee with less experience and fewer relevant qualifications.  Doc. 6 at ¶¶ 115-22.  Additionally, in June 2018, Defendants implemented a new policy forbidding the use of cellular telephones at work, and, even though Plaintiff witnessed multiple coworkers use their phones during working hours, they were not disciplined, whereas Plaintiff was written up the one time that she used her phone.  Doc. 6 at ¶¶ 123-29.

On July 23, 2019, Plaintiff received a Right-to-Sue Letter from the Missouri Commission on Human Rights.  On October 18, 2019, Plaintiff filed this lawsuit in state court, bringing six counts under the Missouri Human Rights Act, Mo. Rev. Stat. § 213.010 et seq. ("MHRA").  Counts I and II are for gender discrimination, in which Plaintiff alleges a hostile work environment and disparate treatment.  Counts IV and V are for disability discrimination, in which Plaintiff alleges that "by virtue of her disability—namely, pregnancy" she was subjected

4

to a hostile work environment and disparate treatment. Counts III and VI are for retaliation, which Plaintiff asserts resulted from her reporting alleged mistreatment to management and bringing a charge of discrimination.

On February 19, 2021, Defendants removed the action to this Court on the basis of diversity jurisdiction. Thereafter, Defendants filed separate motions to dismiss for lack of timely service.[1] In the alternative, Defendants move to dismiss Plaintiff's disability claims in Counts IV and V for failure to state a claim, and seek to strike paragraphs 52 through 71.

## II.     Legal Standard

Defendant has moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of a complaint so as to eliminate those actions "which are fatally flawed in their legal premises . . . thereby sparing litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001) (citing *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

---

[1] Defendant 801 Fish asserts that they were never served at all, and attach an affidavit from their registered agent attesting that the service packet contained only a summons for 801 Group. However, in response, Plaintiff submits a signed return of service for 801 Fish that was served on January 11, 2021, and filed with the Circuit Court of St. Louis County, Missouri, in this case.

Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).

A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). The complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory," and "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [each element]." *Twombly*, 550 U.S. at 562. The reviewing court must accept the plaintiff's factual allegations as true and construe them in the plaintiff's favor, but it is not required to accept the legal conclusions that plaintiff draws from the facts alleged. *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc*. *v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012). A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp*., 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

**III.    Discussion**

  **A.  Motion to Dismiss for Failure to Prosecute**

Defendants argue that Plaintiff's complaint must be dismissed with prejudice for failure to prosecute due to lack of timely service. In Missouri, after a plaintiff files her lawsuit, she must serve process on the defendants within 30 days; if process cannot be served, she must return it to the court within 30 days with a statement of the reason for failure to serve. *See* Mo.

Sup. Ct. R. 54.21. A plaintiff may seek an extension of up to 90 days for service. *Id.* Additionally, Rule 41(b) of the Federal Rules of Civil Procedure provides that a district court may dismiss a case for failure to prosecute a claim, which includes failure to timely serve a defendant.

In determining whether to grant a motion to dismiss for failure to prosecute pursuant to Rule 41(b), a court should consider and balance its need to manage its docket, the public interest in expeditious resolution of litigation, and the risk of prejudice to defendants from delay, with the policy favoring disposition of cases on their merits. *Boyle v. American Auto Service, Inc.*, 571 F.3d 734, 738 (8th Cir. 2009). The movant has the burden of first proving delay on the part of the plaintiff. *Id.* at 739. "But only unreasonable delay will support a dismissal for lack of prosecution, and unreasonableness is not inherent in every lapse of time. . . . [T]he plaintiff may have an explanation that excuses or justifies his failure. It is at this point that the extent of prejudice to the defendant, if any, becomes important. Therefore, delay alone should not be deemed to create a presumption of prejudice. ..." *Id.* (quoting *Nealey v. Transportacion Maritima Mexicana, S.A.,* 662 F.2d 1275, 1280 (9th Cir. 1980)) (internal quotation marks omitted). "[P]rejudice takes two forms: loss of evidence and loss of memory by a witness. [A] district court in the exercise of its discretion should consider whether such losses have occurred and if so, whether they are significant." *Id.* (quoting *Nealey*, 662 F.2d at 1281) (internal quotation marks omitted). The *Boyle* court explained the burden shifting regarding these two factors as follows:

> "[W]here a plaintiff has come forth with an excuse for [her] delay that is anything but frivolous, the burden of production shifts to the defendant to show at least some actual prejudice. If he does so, the plaintiff must then persuade the court that such claims of prejudice are either illusory or relatively insignificant when compared to the force of his excuse. At

7

>that point, the court must exercise its discretion by weighing the relevant factors—time, excuse, and prejudice."

Id. at 739-40 (quoting *Nealey,* 662 F.2d at 1281).

Here, Defendants argue that Plaintiff's lawsuit should be dismissed because she waited until days before the statute of limitations expired before filing her lawsuit and then failed to serve Defendants for over a year. Defendants argue that the delay in service was prejudicial and that the case should be dismissed pursuant to Fed. R. Civ. P. 41 for failure to prosecute due to lack of timely service of process.

Defendants rely on *Boyle*, which affirmed a district court's dismissal under similar circumstances. The Eighth Circuit held that Federal Rule of Civil Procedure 41(b) applied rather than the Missouri Supreme Court Rules. The court observed that the *Boyle* plaintiff "*did not* comply with Missouri law" by failing to serve the defendant within 30 days. *Id.* (emphasis in original). Instead, Boyle waited four years to serve process, and the court noted that he failed to provide any justification for the delay. The court held that because Boyle "had failed to come forth with an excuse for the delay, we need not address whether [defendant] suffered actual prejudice," and the court affirmed the dismissal of plaintiff's case. Defendants here urge this Court to follow similar logic and do the same.

Unlike in *Boyle*, however, Plaintiff here explains that she attempted to serve Defendant multiple times, but was met with difficulties due to the COVID pandemic and resultant shutdowns. Plaintiff argues that the office of Defendants' registered agent was unavailable to accept service due to the Kansas City COVID-19 lockdown. Plaintiff's process server informed Plaintiff's attorney that when she attempted to contact the registered agent she repeatedly received a message that the office was closed due to the pandemic. The record also indicates that the attorney initially assigned to Plaintiff's case was pregnant, and experienced difficulties

8

associated with her pregnancy, including premature labor, and ultimately decided not to return to the firm after her birth, which also caused some difficulties with the management of her case.

Defendants submit an affidavit from an employee of their registered agent attesting that the office was never completely shut down, that she had forwarded the office's phone to her personal cell phone, and she was always available to take calls and assist anyone who tried to contact the office in order to effect service. She further attests that certain employees of the firm were often at the office throughout the pandemic, and the office was rarely unstaffed. Defendants also submit a photo of the front door of their registered agent's office, which had a sign taped to the door with a number to call if you needed to contact them. Because their registered agent's office was not completely shut down, Defendants argue that Plaintiff's proffered reasons for failure to effect timely service are so frivolous as to constitute no reason at all.

Based upon Defendants' submissions, it seems that the office of their registered agent was not entirely shut down, as Plaintiff argues. However, it also seems clear that attempts to effectuate service were in some measure hampered by difficulties associated with the pandemic and attendant shutdowns. After careful consideration of all the parties' submissions, the Court disagrees with Defendants that Plaintiff failed to prosecute her case. Certainly, Plaintiff could have tried more diligently to timely effectuate service. However, as the *Boyle* court observed, due diligence is not a strict requirement with respect to service of process. *Id.* Additionally, Defendants offer no compelling argument with respect to actual prejudice they have experienced due to delay in service. They merely assert that the delay itself is inherently prejudicial. However, "delay alone should not be deemed to create a presumption of prejudice." *Boyle*, 571 F.3d at 739. The Eighth Circuit has made clear that, at least for the purposes of determining

9

whether a delay in service of process can constitute a failure to prosecute, "prejudice takes two forms: loss of evidence and loss of memory by a witness." *Id.* (internal quotation marks and citation omitted). Defendants do not allege either of these grounds as prejudice. Thus, they have failed to meet their burden of demonstrating actual prejudice that would justify a dismissal with prejudice.

Furthermore, the Eighth Circuit has emphasized that "a Rule 41(b) dismissal with prejudice 'is a drastic and extremely harsh sanction, and is proper only when there has been a clear record of delay or contumacious conduct by the plaintiff.' " *DiMercurio v. Malcom*, 716 F.3d 1138, 1140 (8th Cir. 2013) (citing *Skelton v. Rapps*, 187 F.3d 902, 908 (8th Cir. 1999)). Aside from the delay in serving Defendants, Plaintiff has been actively engaged in prosecuting her case. There is no allegation that Plaintiff has failed to participate in any discovery proceedings or that she has failed to move the case forward in any other way. Therefore, Plaintiff has not engaged in the type of delay and inaction that would justify the harsh sanction of a dismissal with prejudice, particularly where, as here, the statute of limitations has run and Plaintiff would lose all chance to prosecute her case. Defendants' motion to dismiss the complaint in its entirety will be denied.

### B. Motion to Dismiss Counts IV and V

The MHRA prohibits employers from discriminating against any individual "with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . disability." Mo. Rev. Stat. § 213.055.1(1)(a). The MHRA defines "disability" as a "physical . . . impairment which substantially limits one or more of a person's major life activities . . . which with or without reasonable accommodation does not interfere with performing the job." Mo. Rev. Stat. § 213.010(4). Furthermore, an impairment that is

10

"medically treatable without significant residual symptoms does not rise to the level of a disability under the MHRA because a major life activity is not *permanently* substantially limited." *Cook v. Atoma Int'l of America, Inc.*, 930 S.W.2d 43, 47 (Mo. Ct. App. 1996) (emphasis added).

In Counts IV and V of her complaint, Plaintiff brings MHRA claims for harassment and discrimination on the basis of disability. Therefore, it is an essential element of Plaintiff's claims in Counts IV and V that she was legally disabled at the time of the alleged discriminatory conduct. In support of her claims, Plaintiff asserts that she is a member of a protected class "by virtue of her disability—namely, pregnancy," and that she was subjected to "severe and unwelcome conduct" and "tangible employment actions" and "disparate treatment" on the basis of her disability. Doc. 6 at ¶¶ 180-81, 196-98.

Defendants assert, in their partial motion to dismiss, that pregnancy, in and of itself, is not a disability under the MHRA, and accordingly, Plaintiff's claims in these counts must fail as a matter of law. Defendants, in support of their argument, point to the Missouri Commission on Human Rights regulations interpreting the MHRA, which expressly provide that "[d]isabilities caused or contributed to by pregnancy," as opposed to pregnancy itself, are considered "temporary disabilities and should be treated as such" under the Act. Mo. Code Regs. Tit. 8 § 60-3.040(16)(A). Because pregnancy is not a permanent condition, and Plaintiff alleges no complications related to her pregnancy that could rise to the level of a disability—or indeed, any complications at all—Defendants argue that Plaintiff was not disabled for purposes of the MHRA.

Plaintiff argues that pregnancy is a disability under the MHRA, and directs the Court's attention to the same regulation on which Defendants rely. The Court does not find that the

11

language in this regulation supports Plaintiff's position, and agrees with Defendants that pregnancy itself is not a disability under the Act, and that Plaintiff's complaint is devoid of allegations that she suffered from any pregnancy-related complications that could have rendered her disabled for purposes of the statute. *See Roberds v. AT&T Operations, Inc*. 2012 WL 4435116, *11 (E.D. Mo. Sept. 26, 2012) (Pregnancy is not a per se disability under the MHRA, and "absent unusual circumstances, pregnancy-related complications do not constitute disabilities as a matter of law."). Accordingly, Plaintiff has not adequately alleged that she was disabled under the MHRA, and Counts IV and V must be dismissed.

### C. Motion to Strike

Finally, Defendants move to strike as immaterial, impertinent, or scandalous paragraphs 52 through 71 of Plaintiff's complaint. These paragraphs describe the sexual nature of the relationship between Plaintiff and Ian Rockwell, as well as more generally, the culture and atmosphere at her place of employment that she alleges condoned sexual harassment. Defendants argue that the allegations in the challenged paragraphs are entirely immaterial to Plaintiff's complaint, as the incidents described therein involve matters that happened prior to March 2017, and thus outside the applicable statute of limitations. Furthermore, Defendants argue that the allegations are not just irrelevant, but also contain scandalously prejudicial information, and must be stricken for that reason as well.

Under Federal Rule of Civil Procedure 12(f), "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "Liberal discretion is enjoyed by the district court in ruling on a motion to strike." *Stanbury Law Firm v. I.R.S.,* 221 F.3d 1059, 1063 (8th Cir. 2000). However, striking a party's pleadings is an extreme measure that is viewed with disfavor and infrequently granted. *Lunsford v. United States,* 570 F.

2d 221, 229 (8th Cir.1977). "In ruling on a motion to strike, the Court views the pleadings in the light most favorable to the pleader." *Shirrell v. St. Francis Med. Ctr*., No. 1:13-CV-42 SNLJ, 2013 WL 3457010, at *1 (E.D. Mo. July 9, 2013) (citation omitted). "To prevail on a motion to strike, the movant must clearly show that the challenged matter has no bearing on the subject matter of the litigation and that its inclusion will prejudice the defendants." *Aldridge v. City of St. Louis, MO*, 4:18-cv-1677 (CAS), 2019 WL 1695982, at *15 (E.D. Mo. Apr. 17, 2019) (citing 2 James W. Moore, et al., Moore's Federal Practice § 12.37[3] (3rd ed. 2018) (internal quotation marks omitted).

There is general judicial agreement that a motion to strike should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy. *North Face Apparel Corp. v. Williams Pharmacy, Inc.,* 4:09 CV 2029 RWS, 2010 WL 546928, at *1 (E.D. Mo. Feb. 9, 2010). Matters that are not strictly relevant to the principle claim should not be stricken if they provide "important context and background" to claims asserted. *Stanbury Law Firm,* 221 F.3d at 1063. Moreover, "even when technically appropriate and well-founded, Rule 12(f) motions are not granted in the absence of a showing of prejudice to the moving party." *Am. Home Assur. Co. v. Pope,* 2 4057 CV C SOW, 2005 WL 1312975, at *1 (W.D. Mo. June 1, 2005) (internal citations omitted).

Here, the Court finds that the challenged paragraphs are clearly relevant to Plaintiff's claims and provide "important context and background" to her claims of gender discrimination. *Stanbury Law Firm,* 221 F.3d at 1063. Indeed, it would difficult to decipher her complaint without the information contained therein. As to whether the challenged paragraphs contain information too scandalous to survive the motion, the Court does not find this to be the case in this instance. "It is not enough that the matter offends the sensibilities of the objecting party if

the challenged allegations describe acts or events that are relevant to the action." *See* Wright & Miller, § 1382 Motion to Strike—Redundant, Immaterial, Impertinent, or Scandalous Matter, 5C Fed. Prac. & Proc. Civ. § 1382 (3d ed.). The paragraphs that Defendants move to strike are relevant to Plaintiff's claims and the issues in this case, and are not so scandalous in nature as to cause prejudice to Defendants. Defendants alternative motion to strike under Rule 12(f) will be denied.

**IV.   Conclusion**

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 41(b) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss Counts IV and V of Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(6) is **GRANTED**.

**IT IS FINALLY ORDERED** that Defendants' motion to strike paragraphs 52 through 71 of Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(f) is **DENIED**.

An appropriate Partial Order of Dismissal shall accompany this Memorandum and Order. Dated this 15th day of June, 2021.

/s/Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE
